**Richard KLEIN and Virginia Klein, Plaintiffs,**

v.

**GENERAL ELECTRIC COMPANY, Defendant.**

**No. 50040.**

Missouri Court of Appeals,
Eastern District,
Division Two.

July 22, 1986.

Motion for Rehearing and/or Transfer to Supreme Court Denied Aug. 27, 1986.

Gerald D. Morris, Shepherd, Sandberg & Phoenix, St. Louis, for defendant.

Anthony S. Bruning, Leritz, Reinert & Duree, P.C., St. Louis, for plaintiffs.

DOWD, Presiding Judge.

Defendant, General Electric Company, appeals from a judgment based on a jury verdict of $600,000 in favor of the plaintiffs. This product liability action is founded on the theory of strict liability and is brought by the Kleins for the damages to their home caused by a fire originating in an automatic coffeemaker manufactured by the General Electric Company (hereinafter defendant). Defendant raises numerous points on appeal. We affirm the judgment of the trial court.

On December 24, 1980, a fire broke out in the Richard Klein home at approximately 7:50 a.m. The events preceding the fire are as follows: On December 23, 1980, the evening before the fire, the Kleins and three of their children were at home after 10:30 p.m. Mr. Klein and the youngest son retired for the evening at approximately 11:30 p.m. Mrs. Klein and her two daughters talked in the kitchen until approximately 1:30 a.m. at which time the daughters went to bed. Mrs. Klein retired approximately 20 minutes later after straightening up the house and setting the coffeemaker to brew coffee at 7:15 a.m.

On December 24, 1980, Mr. Klein arose at approximately 7:00 a.m. He proceeded into the living room to turn on the Christmas tree lights. He remained in the living room approximately 7 to 10 minutes before returning to the master bedroom to rest. Upon returning to the master bedroom, Mr. Klein shut the door to the bedroom which led into the living room. After resting for an additional 15 minutes, Mr. Klein entered the master bathroom and proceeded to take a shower.

At approximately 7:50 a.m., Mrs. Klein was awakened by the home fire alarm. She jumped out of bed, opened the bedroom door, and saw the rooms of the house filled with smoke and a glow of light coming from the kitchen. Mr. and Mrs. Klein and the three children escaped from the home without injury.

Mrs. Klein had purchased the Brew Starter automatic coffeemaker Model DCM15, manufactured by the defendant, approximately six months prior to the fire. No repairs or maintenance work had been performed on the coffeemaker prior to the fire and it had always operated normally.

The City of Frontenac responded to the fire at approximately 7:53 a.m. Fire Chief Robert S. Bongner, who was in charge of putting out the fire, testified that he inspected the home shortly after the fire and concluded that the source of the fire was the coffeemaker located in the kitchen of the house. He based his opinion on several findings: the burn pattern found on the walls, cabinets and counter area of the kitchen; the scorched counter top directly underneath the coffeemaker; the fusion of the coffeemaker to the countertop; the unburned countertop located underneath the can opener which sat to the left of the coffeemaker; and the unburned paper found in the wastebasket located on the floor to the right of the coffeemaker.

Plaintiffs' experts, John F. Kennedy, a fire recreation expert, and Robert Freund, a consulting electrical engineer, testified that, in their opinion, the fire originated in the coffeemaker. Their opinion was based on their inspection of the remains of the coffeemaker, the can opener, photographs of the kitchen, and the results of two laboratory experiments conducted to determine the burn characteristics of a Brew Starter automatic coffeemaker Model DCM15.

The plaintiffs' experts were unable to pinpoint a defect in the Klein's coffeemaker because of the destruction to the coffeemaker during the fire. They, however, noted potential defects in the construction and design of the Brew Starter automatic coffeemaker Model DCM15 manufactured by defendant. As a result of the design defect, the experts concluded that the coffeemaker malfunctioned and that the fire started in the coffeemaker and subsequently spread throughout the Klein's home. The experts were able to negate other possible causes of the fire in the Klein's home, namely the wastebasket and the can opener.

On appeal, defendant contends that the trial court erred when it denied defendant's motion for a directed verdict because the plaintiffs failed to present sufficient substantial evidence to submit the case to the jury. Specifically, defendant asserts that the plaintiffs failed to present evidence that the coffeemaker was defective and that the coffeemaker was the source of the fire which damaged the plaintiffs' home.

■ Missouri courts have adopted the doctrine of strict liability in tort as set forth in the Restatement (Second) of Torts § 402A (1965). *Keener v. Dayton Electric Manufacturing Co.*, 445 S.W.2d 362 (Mo. 1969). Thus, one who sells a "product in a defective condition unreasonably dangerous to the user or consumer ... is subject to liability" for injury to the user or the user's property caused by the defect. *Keener v. Dayton Electric Manufacturing Co., supra*, at 364. To prevail under the doctrine of strict liability in tort, the plaintiffs must prove that the product was de-

fective and dangerous when put to a reasonable use anticipated by the manufacturer and that the plaintiff sustained damage as a direct result of the defect. *Blevins v. Cushman Motors*, 551 S.W.2d 602, 607 (Mo. banc 1977).

The evidence will be considered in the light most favorable to the plaintiffs, with all reasonable inferences to be drawn therefrom, and we will disregard the defendant's evidence unless it aids the plaintiffs' case. *Winters v. Sears, Roebuck and Co.*, 554 S.W.2d 565, 569–70 (Mo.App. 1977).

■ First we must determine whether the plaintiffs presented sufficient substantial evidence to the jury that the coffeemaker was defective. The plaintiffs must prove that there was a defect in the product which existed when the product left the manufacturer's control and entered the stream of commerce and that the product was put to a use reasonably anticipated by the manufacturer. *Keener v. Dayton Electric Manufacturing Company, supra*, at 365.

■ The existence of a defect may be inferred from circumstantial evidence with or without the aid of an expert witness. *Winters v. Sears, Roebuck and Co., supra*, at 570. The testimony of an expert that a defect in a product was the probable cause of an incident may constitute substantial evidence such that a jury could find that the incident in question resulted from a defect in a product rather than from other causes. *Lifritz v. Sears, Roebuck and Co.*, 472 S.W.2d 28, 32 (Mo.App.1971). Our court held that an expert witness' personal observation of a fire scene and his investigation of the remains of a burned television set, in addition to the testimony of homeowners who witnessed the fire coming from the television set, constituted substantial evidence that the fire which originated in the television set was the result of a defect. *Winters v. Sears, Roebuck and Co., supra*, at 570.

■ In the case before us, there was substantial competent evidence from which

a jury could find that the fire was the result of a defect in the Klein's coffeemaker. Mrs. Klein set the coffeemaker to brew coffee at 7:15 a.m. When Mr. Klein awoke at approximately 7:00 a.m., there was no fire present. The fire alarm rang at approximately 7:50 a.m., some 35 minutes after the coffeemaker was set to start brewing coffee. The plaintiffs' expert, Mr. Freund, an electrical engineer, testified that in his opinion the coffeemaker was defective. He testified that the defect in the coffeemaker was in the safety device which shuts off the electricity to the coffeemaker when the temperature in the coffeemaker reaches an unsafe level. If the safety device is placed in a position within the coffeemaker where it is unable to detect temperature, the electricity will continue to flow and the heating component will continue to generate heat causing ignition of the coffeemaker. Mrs. Klein testified that she had purchased the coffeemaker six months prior to the fire and that it had been used as intended by the defendant. The coffeemaker had never malfunctioned and had never been serviced.

We find that there was sufficient evidence presented that a jury could find that the coffeemaker was defective when sold by the defendant and that the coffeemaker had been put to a reasonably anticipated use.

█ In addition, defendant contends that the plaintiffs failed to establish that the coffeemaker was the source of the fire. We find there was competent and substantial evidence from which a jury could find that the fire, which damaged the Klein's home, started in the coffeemaker. Mrs. Klein set the coffeemaker to automatically brew coffee at 7:15 a.m. There was no evidence that the fire was present in the Klein's home at 7:00 a.m. Mrs. Klein was awakened at 7:50 a.m. to find the rooms of the house filled with smoke and a glow of light coming from the kitchen. Defendant's expert, Mr. Donald G. Schultz, an electrical engineer, testified that he conducted a burn experiment in which he determined that a Brew Starter coffeemaker

Model DCM15 will ignite 25 minutes and 50 seconds after it is set to brew if the safety device fails. The fire alarm awoke Mrs. Klein 35 minutes after the coffeemaker was set to brew coffee.

Additionally, Chief Bongner testified that, in his opinion, the coffeemaker was the source of the fire because it was fused to the countertop, and because the burn patterns in the kitchen led directly to the coffeemaker. Plaintiffs' experts, John F. Kennedy, a fire recreation expert, and Robert Freund, an electrical engineer also testified that, in their opinion, the fire originated in the coffeemaker. Additionally, the plaintiffs' experts ruled out the can opener and the wastebasket as potential sources of the fire. We find that there was competent and substantial evidence presented to support the jury's finding that the fire started in the coffeemaker.

The plaintiffs made a submissible case in this strict liability action. The plaintiffs satisfied their burden of proving that a defect existed in the coffeemaker and that the coffeemaker was the source of the fire which destroyed the plaintiffs' home. The trial court did not err when it denied defendant's motion for a directed verdict. Defendant's first point is denied.

Defendant's second point asserts that the trial court erred when it overruled defendant's motion to dismiss or in the alternative to join plaintiffs' insurer, Safeco Insurance Company (hereinafter Safeco), as a party plaintiff. Defendant contends that the Kleins assigned their rights against defendant to Safeco in exchange for Safeco's payment of their claim, and therefore, Safeco was the real party in interest.

The Kleins made a claim pursuant to their insurance policy for damages and expenses resulting from the fire and received the sum of $266,141.62 from Safeco. The total damage to the Klein home and the additional living expenses totaled $595,-518.30. The Kleins executed a proof of loss statement in which they acknowledged the receipt of $266,141.62 from Safeco. Additionally, the proof of loss statement provided:

In consideration of payment of this claim *I give the company my rights of recovery up to the amount paid,* and I will execute all documents required of me and cooperate with the company in prosecuting all actions to effect recovery. The company *is authorized to commence and prosecute any action* or proceedings in my name, or in its own, or in the name of any person or persons to whom it may assign its claims hereunder, *for the purpose of effecting collection of the amount mentioned above* (emphasis ours).

Subsequently, Safeco and the Kleins entered into an agreement to return any rights which may have been received by Safeco in the proof of loss statement. The agreement reads as follows:

WHEREAS, Klein and SAFECO deny that Klein assigned its rights to sue and recover money to SAFECO.

Nevertheless, in order to resolve this issue and to fully protect defendant from multiple claims and suits and judgments and to protect defendant from any subsequent action, it is agreed by and between the parties hereto as follows:

1. SAFECO agrees that it will be bound by the outcome of the litigation in the case of *Klein v. Venture Stores and General Electric Company,* Cause No. 471441 and that it agrees not to bring any further claims or suits against Venture Stores or General Electric Company arising out of the matter alleged in the above lawsuit.

2. For the sum of $1.00 and other good and valuable consideration, SAFECO does hereby reassign to Klein all rights of recovery against Venture Stores and General Electric Company which may have been assigned to SAFECO by the Proofs of Loss or other documents executed by Klein in connection with the claim against SAFECO arising out of the fire and loss of December 24, 1980. The proceeds of any recovery shall be divided between Klein and SAFECO as they shall agree.

In Missouri there is a distinct difference between the assignment of a claim and subrogation to a claim. If a claim has been assigned, there is a complete divestment of all rights from the assignor and the vesting of those rights in the assignee. If the claim has been subrogated, an equitable right passes to the subrogee and the legal right to the claim remains in the subrogor. Bare legal title is sufficient to maintain an action of law. *Holt v. Myers,* 494 S.W.2d 430, 437 (Mo.App.1973).

Recovery for damages from a third party does not, in and of itself, destroy legal ownership and the right to maintain an action. *Jacobs v. Fodde,* 458 S.W.2d 588, 592 (Mo.App.1970). If payment was made in full satisfaction and release, the claim would be destroyed. But if payment is not in exchange for satisfaction and release, the claim is still alive. From the fact of payment, it cannot be inferred solely that there has been an assignment or release of the cause of action. *Hayes v. Jenkins,* 337 S.W.2d 259, 261 (Mo.App. 1960).

We are of the opinion that the insurer, Safeco, was subrogated to the plaintiffs right of recovery to the proceeds recovered in the cause of action up to the amount paid by Safeco to the plaintiffs. Defendant's contention that the proof of loss statement was an assignment of plaintiffs' legal rights is without merit. There is no provision in the proof of loss statement that the plaintiffs' cause of action against the defendant was assigned. Rather, the proof of loss statement obligated the plaintiffs to prosecute the claim against the defendant, or alternatively, to cooperate with Safeco in its suit against the defendant for the sole purpose of recovering the amount of the claim paid to the plaintiffs by Safeco. Additionally, any rights which were transferred in the proof of loss statement were returned in the subsequent agreement entered into by the Kleins and Safeco.

If the interest of the insurer is derived by subrogation, the action must be

brought by or at least in the name of the insured. *Warren v. Kirwan*, 598 S.W.2d 598, 599 (Mo.App.1980). It is clear from the proof of loss statement that the plaintiffs retained legal title to the cause of action against defendant, and therefore, were the real parties in interest. § 507.010 RSMo (1985); Supreme Court Rule 52.01. The trial court did not err when it denied defendant's motion to dismiss. Defendant's second point is denied.

■ Defendant's third point contends that the trial court erred in admitting into evidence plaintiffs' exhibit No. 89, which was a list of the articles contained in the Klein's home and was destroyed by the fire. Defendant argues that exhibit No. 89 violated the best evidence rule, because the exhibit was not the original list of damaged property which was prepared by Mrs. Klein. We disagree.

The list of damaged property was prepared by Mrs. Klein within five weeks after the fire. Mrs. Klein testified that initially she had prepared the list on legal pads. The original list did not include values of the damaged property. This list of property was then typed onto a grid, similar to plaintiffs' exhibit No. 89 by the plaintiffs' attorney. The value of the damaged property was later filled in by Mrs. Klein on the typed grid. The values of the property were then typed onto the grid by plaintiffs' attorney.

At trial, Mrs. Klein reviewed exhibit No. 89, which set forth a description of the damaged property, the place of purchase, the purchase price, and the value of the property at the time of the fire. Mrs. Klein confirmed that it was identical to the list of damaged property which she had prepared.

■ The best evidence rule is activated when the terms of a writing are in dispute, in which case the original document is deemed to be the best evidence of the terms of the writing. *Moschale v. Mock*, 591 S.W.2d 415, 419 (Mo.App.1979). Two distinct rules are involved in determining the application of the best evidence

rule; one relating to proof of what the instrument contains and the other relating to the probative effect of its recitals. The best evidence rule applies only in the case of the former. *Wilborn v. Williams*, 555 S.W.2d 44, 45 (Mo.App.1977) citing 2 Jones on Evidence, § 7.4, p. 96 (6th ed. 1972). Where the contents of a writing are not directly in issue, although the evidence contained in the writing may bear upon a fundamental issue in the case, the best evidence rule does not apply and secondary evidence may be used without accounting for the original document. *Wilborn v. Williams, supra*, at 45; *Aviation Enterprises, Inc. v. Cline*, 395 S.W.2d 306, 308 (Mo. App.1965) citing 32A C.J.S. Evidence § 787, p. 109.

■ Our research revealed no Missouri cases on point with this issue on appeal. Competent evidence which tends to show the extent of the loss which a plaintiff has sustained by reason of a fire is ordinarily admissible. An inventory or list made after a fire and used as the basis of testimony of the witness as to the quality and value of the property damaged and destroyed is admissible as a portion of the testimony. This list is admissible even though it is made in part from the recollection of the witness testifying to its correctness. *Stone v. Safe Insurance Company*, 109 W.Va. 739, 156 S.E. 106, 107–8 (1930).

We have reviewed the circumstances in which plaintiffs' exhibit No. 89 came into being from the briefs and the transcript. We are confident that it was prepared by a person qualified to speak to the question of property damaged in the fire. Exhibit No. 89 was competent evidence on the issue of property damage and was properly admitted into evidence. Defendant's third point is denied.

Defendant's fourth point contends that the trial court erred in overruling defendant's motion for a new trial on the ground that the plaintiffs failed to make a submissible case on the issue of damages to their home and to art work contained therein. Specifically, defendant contends that the plaintiffs failed to produce competent evi-

dence showing the difference between the fair market value of their property immediately before and immediately after the fire.

Mr. and Mrs. Klein testified regarding the damage to their home and the damaged items contained therein as a result of the fire. Both Mr. and Mrs. Klein testified that, in their opinion, the value of their home immediately before the fire was $350,000 and the value immediately after the fire was $125,000. The pre-fire value was based on the price that the Kleins had considered selling the house for prior to the fire. After the fire, the Kleins had received an offer of $125,000 from a rehab construction builder. Mrs. Klein testified as to the value of the personal property before and after the fire. Mr. Klein testified to the additional living expenses incurred as a result of the fire.

Additionally, defendant argues that plaintiffs failed to adequately prove the post-fire value of the art work contained in the Klein's home. JoAnn Perse testified to the pre-fire value of the art work. Mrs. Klein testified that she was unable to restore or to obtain a post-fire value on the art work. Plaintiffs testified that, in their opinion, the art work was rendered worthless as a result of the fire.

■ The measure of damages for tortious injury to real property is the difference in the fair market value before and after the injury. MAI No. 4.02. An owner of property is qualified to give his opinion as to the value of his own property even though he is not a real estate expert. *Esmar v. Zurich Insurance Co.*, 485 S.W.2d 417, 424 (Mo.1972). This qualification of the landowner rests on the assumption that an owner is familiar with his property and its actual and potential uses. *Casada v. Hamby Excavating Co., Inc.*, 575 S.W.2d 851, 854 (Mo.App.1978). We find the plaintiffs gave competent testimony as to the value of their home and the art work contained in their home both before and after the fire. There was sufficient evidence on the issue of damages presented and the case was properly submitted to the jury. Defendant's fourth point is denied.

Defendant's fifth point contends that the trial court erred in refusing to admit into evidence defendant's exhibit T, a coffeemaker used by the defendant's expert in an experiment.

■ The admissibility of experimental evidence is within the discretion of the trial court and the court's ruling will not be disturbed on appeal absent a clear showing of an abuse of discretion. *Cohen v. Archibald Plumbing & Heating Company*, 555 S.W.2d 676, 680 (Mo.App.1977). Experimental evidence is admissible when it is shown that the experimental tests were conducted under conditions substantially similar, but not necessarily identical to the actual conditions which existed at the time of the occurrence giving rise to the suit. *Blevins v. Cushman Motors, supra*, at 610. *Klaesener v. Schnucks Markets, Inc.*, 498 S.W.2d 555, 557 (Mo.1973). However, when experimental evidence is offered for the purpose of showing a thing's capacity or tendency to produce or not produce an effect of a given character, there must be a substantial similarity in circumstances as might affect the result in question. *Ward v. Penn. Mutual Life Insurance Company*, 352 S.W.2d 413, 425 (Mo. App.1961).

■ We find that the trial court did not abuse its discretion when it refused to admit into evidence the condition of a coffeemaker used by defendant in an experiment. Defendant attempted to introduce into evidence a coffeemaker, which had been burned as the result of an internal fire to show its physical condition. The coffeemaker used by defendant's expert was not the same model of coffeemaker as that which was owned by the Kleins and which is the subject of this lawsuit. Additionally, the defendant's expert conducted the experiment in the open air on a plywood board. The circumstances of defendant's experiment were not substantially similar to the circumstances which existed at the time of the fire in the Klein's home. Defendant's fifth point is denied.

Defendant's sixth point contends that the trial court erred when it sustained plaintiffs' objection to the testimony of defendant's expert concerning the inspection procedures used by defendant to insure proper fastening of the safety device in the coffeemakers. Defendant argues that this testimony was relevant to prove the absence of defect in the coffeemaker. We disagree.

The determination of relevancy of offered evidence is within the sound discretion of the trial court. On appeal, the trial court's ruling will be upheld unless a clear abuse of discretion is shown. *Keller v. International Harvester Corp.*, 648 S.W.2d 584, 588 (Mo.App.1983).

■■■ The case before us was submitted on the theory of strict liability for design defect. Under strict liability, evidence regarding the manufacturer's knowledge, fault or remedial conduct is irrelevant. *Elmore v. Owens-Illinois*, 673 S.W.2d 434, 438 (Mo. banc 1984). The defendant's proffered evidence of the inspection procedures used to guarantee proper fastening of the thermal fuse was irrelevant to the case. The trial court properly denied admission into evidence testimony regarding defendant's inspection procedures. Defendant's sixth point is denied.

Defendant's seventh point contends that the trial court erred when it prohibited defense counsel from cross-examining plaintiffs' expert regarding the expert having been previously named as a co-conspirator in a federal case. Defendant argues that this line of questioning went to the credibility of the witness and that he was prejudiced because he was unable to attack the witness' credibility.

■■■ A witness' credibility may not be discredited through the showing of a mere accusation, arrest, or criminal charge which does not result in a conviction. *State v. Easley*, 662 S.W.2d 248, 250 (Mo. banc 1984). However, this rule is not applied when the accusation or indictment reveals bias on the part of the witness or a specific interest of a witness concerning the outcome of the trial. *Supra*, at 251.

The scope and extent of questioning permitted during cross-examination on collateral matters concerning misconduct of a witness for purposes of impeachment is left to the trial court's discretion. *State v. Cleveland*, 583 S.W.2d 263, 266 (Mo.App. 1979). On review, the trial court's determination will be set aside only where it is affirmatively shown that the exercise of discretion was abused. *State v. Lynch*, 528 S.W.2d 454, 458 (Mo.App.1975).

■■■ In the case before us, the accusation involving the plaintiffs' expert witness did not reveal a bias on the part of the witness or a specific interest of the witness concerning the outcome of the trial. The trial court did not abuse its discretion in this case. Defendant's seventh point is denied.

Defendant contends in his eighth point that the trial court erred when it gave Instruction No. 4, the burden of proof instruction patterned after MAI No. 3.01. Defendant argues that Instruction No. 4 was confusing, misleading and resulted in the jury being misdirected on the law.

■■■ The Notes on Use following MAI No. 3.01 require that this burden of proof instruction be given in every case, except where another burden of proof instruction has been provided. Notes on Use, MAI No. 3.01; *Sears, Roebuck and Co. v. Peerless Products, Inc.*, 539 S.W.2d 768, 770 (Mo.App.1976). Failure to follow MAI instructions may be reversible error. *Riley v. Bi-State Transit System*, 459 S.W.2d 753, 757 (Mo.App.1970). Defendant failed to challenge the burden of proof instruction at trial. *Fowler v. Park Corp.*, 673 S.W.2d 749, 756–7 (Mo. banc 1984); *Asher v. Broadway-Valentine Center Inc.*, 691 S.W.2d 478, 484 (Mo.App.1985). We find no merit in defendant's complaint. Defendant's eighth point is denied.

■■■ Defendant's ninth point on appeal contends that the trial court erred in giving Instruction No. 10, the so called "hammer" instruction patterned after MAI–CR No. 1.10, to the jury over the objection of both parties. Defendant argues that the read-

ing of the "hammer" instruction was improper because the instruction contained language urging the whole jury to reach a verdict and therefore misdirected the jury. We disagree.

The jury deliberated from 10:47 a.m. until 5:10 p.m., at which time they were called into the courtroom. The foreman was asked what the "numbers" were at that time. He responded that the jury was eight and four on the issue of liability. Thereafter, the jury resumed deliberations in the jury room until 6:01 p.m., when the jury was called back to the courtroom and read the "hammer" instruction.[1] Approximately one-half hour after receiving the "hammer" instruction, the jury returned a verdict for the plaintiffs. The jury was polled and it was determined that nine jurors voted for the plaintiffs and three jurors voted for the defendant.

A trial court's admonitions to a jury regarding it duties and powers when the jury is deadlocked has been held proper. *Anderson v. Bell*, 303 S.W.2d 93 (Mo.1957). Specifically, the use of MAI–CR No. 1.10 has been held proper in civil cases. *Garner v. Jones*, 589 S.W.2d 66 (Mo.App.1979). The arguments raised by the defendant were effectively analyzed in *Garner v. Jones*. In that case, the court noted that the language in the "hammer" instruction regarding the "agreement of the whole jury" was not coercive because the verdict was returned by nine jurors. Three jurors did not agree to the verdict. *Supra.* The case before us is like *Garner v. Jones*. We do not need to restate the analyses set forth in *Garner v. Jones* except to state that we concur therein.

■ In the hearing on defendant's motion for new trial, the defendant made an

offer of proof of a juror's statement that the juror was coerced to find for the plaintiffs after the "hammer" instruction was given. The court properly ruled that this was an attempt to impeach the verdict. *Anderson v. Bell, supra*, at 100. Defendant's ninth point is denied.

Defendant contends in his final point that the trial court erred in denying defendant's pretrial motion to inspect and test the thermostat of the coffeemaker.

The defendant's expert, Mr. Schultz, was allowed to personally inspect, test and photograph the coffeemaker on April 16, 1983. At that time, Schultz visually examined the coffeemaker and tested the fuse and thermostat with a ohmmeter. A protective order, filed by defendants, was entered by July 12, 1982, to prevent plaintiffs from conducting further tests on the coffeemaker. Defendant's motion to inspect was denied on September 18, 1984, less than two weeks from the date the case was set for trial.

■ The trial court is vested with wide discretion to administer the rules of discovery. *Great Western Trading Co. v. Mercantile Trust Co. National Association*, 661 S.W.2d 40, 43 (Mo.App.1983). On appeal, the ruling of the trial court will not be disturbed unless the court has abused its discretion. *State ex rel. Kuehl v. Baker*, 663 S.W.2d 410, 411 (Mo.App.1983). The word "inspection" has broader meaning than just a mere looking, rather it means to examine carefully or critically investigate and *test officially* (emphasis ours). *State ex rel. State Farm Mutual Auto Insurance Co. v. Rickhoff*, 509 S.W.2d 485, 486 (Mo.App.1974). We find that the trial court, in accordance with the protective order placed on the burned cof-

---

**1.** It is desirable that there be a verdict in every case. The trial of a lawsuit involves considerable time and effort, and the parties are entitled to have their rights determined once and for all in every case. The twelve jurors chosen to try this case should be as well qualified to do so as any other twelve that might hereafter be chosen. Open and frank discussion by you in your jury room of the evidence in this case may aid you in agreeing upon the facts; however, no juror should ever agree to a verdict that violates the instructions of the court, nor find as a fact that which under the evidence and his conscience he believes to be untrue. Yet each of you should respect the opinion of your fellow jurors as you would have them respect yours, and in the spirit of tolerance and understanding endeavor to bring deliberations of the whole jury to an agreement upon a verdict. MAI–CR No. 1.10.

feemaker, properly denied defendant's pretrial motion. The defendant was not prejudiced by this ruling because the defendant had previously inspected the remains of the coffeemaker. Defendant's final point is denied.

The judgment of the trial court is affirmed.

REINHARD and CRIST, JJ., concur.