200 F.Supp.2d 1103 (2001)
Joseph Thomas DONOVAN, Jr., et al., Plaintiffs,
v.
MISHY SPORTSWEAR, INC. a/k/a, Peter Popovitch, Defendant.
No. 4:00-CV-973 SNL.
United States District Court, E.D. Missouri, Eastern Division.
December 18, 2001.
*1104 James C. Owen, Kathrine S. Walsh, McCarthy and Leonard, Chesterfield, MO, for plaintiffs.
Frank N. Gundlach, Armstrong Teasdale, LLP, St. Louis, MO, Mary Carol Parker, Arthur F. Clark Law Offices, St. Louis, MO, Michael J. Goldman, Hawkins and Parnell, Atlanta, GA, for defendant.

MEMORANDUM OPINION
LIMBAUGH, District Judge.
This matter is before the Court on defendant's motion for summary judgment (# 28) and defendant's motion in limine to prohibit plaintiffs expert witness from testifying at trial (# 29). Plaintiffs Complaint alleges four counts; however, plaintiffs state in their memorandum in opposition to the summary judgment motion that they do not intend to pursue Counts I and III at trial. Therefore, the Court will assume that plaintiffs have abandoned those claims, and will grant judgment on the merits in favor of defendants on Counts I and III.[1] The remaining counts *1105 allege strict products liability and negligence for defective design of a velour sweatsuit.

Summary Judgment Standard
Courts have repeatedly recognized that summary judgment is a harsh remedy that should be granted only when the moving party has established his right to judgment with such clarity as not to give rise to controversy. New England Mut. Life Ins. Co. v. Null, 554 F.2d 896, 901 (8th Cir.1977). However, summary judgment motions "can be a tool of great utility in removing factually insubstantial cases from crowded dockets, freeing courts trial time for those that really do raise genuine issues of material fact." Mt. Pleasant v. Associated Elec. Coop., Inc., 838 F.2d 268, 273 (8th Cir.1988).
Pursuant to Federal Rule of Civil Procedure 56(c), a district court may grant a motion for summary judgment if all the information before the court demonstrates that "there is no genuine issue as to a material fact and the moving party is entitled to judgment as a matter of law." Poller v. Columbia Broad. Sys., Inc., 368 U.S. 464, 467, 82 S.Ct. 486, 488, 7 L.Ed.2d 458 (1962). The burden is on the moving party. Mt. Pleasant, 838 F.2d at 273. After the moving party discharges this burden, the nonmoving party must do more than show that there is some doubt as to the facts. Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986). Instead, the nonmoving party bears the burden of setting forth specific facts showing that there is sufficient evidence in its favor to allow a jury to return a verdict for it. Celotex Corp. v. Catrett, 477 U.S. 317, 324, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986).
In passing on a motion for summary judgment, the court must review the facts in a light most favorable to the party opposing the motion and give that party the benefit of any inferences that logically can be drawn from those facts. Buller v. Buechler, 706 F.2d 844, 846 (8th Cir.1983). The court is required to resolve all conflicts of evidence in favor of the nonmoving party Robert Johnson Grain Co. v. Chem. Interchange Co., 541 F.2d 207, 210 (8th Cir.1976).

Factual Background
On November 26, 1997, Bonnie Donovan was alone in her kitchen cooking on a gas stove. She was wearing a two-piece, velour sweatsuit when the sleeve of the garment came into contact with the flame from the stove, thereby igniting her clothing. Mrs. Donovan at some point discarded the garment on the kitchen floor. She was at home by herself at the time, and there were no witnesses to the fire.
Mrs. Donovan's home was monitored for security and fire, and the smoke detector sent a signal to the security company. The security company then called the Des Peres Fire Department. The fire department arrived and Mrs. Donovan met them at the door. She was then taken to the ambulance to receive First Aid and eventually was taken to the hospital. The Fire Marshall's Investigation Report stated that on the floor of the kitchen there was burned debris which the fire marshall believed to be Mrs. Donovan's clothing. There was fire damage to the bottom of the island counter, located directly across from the stove where there was a spray attachment with water. There were also burns to the leg of one of the counter stools. There was a bit of burnt debris leading to the upstairs bedroom, and burnt debris on the bed in the upstairs bedroom. The remains of Mrs. Donovan's bra were found near the bed. There was also burnt debris leading into the bathroom off of the bedroom, and the remains of burnt nylons were on the bathroom sink counter.
*1106 Mrs. Donovan was taken to the Burn Unit at St. John's Mercy Medical Center. She sustained second and third degree burns, and she was eventually placed on a respirator. She remained in the hospital until her death on January 24, 1998. Mrs. Donovan did talk to her children and write notes when she was first admitted into the hospital, and she reportedly told them that it happened quickly and that her clothes just melted. She apparently continued to say that she did not know what happened because it happened so fast.
The garment Mrs. Donovan was wearing was manufactured by defendant. It was constructed of a velour material, consisting of a 100% polyester backing and a 100% cotton pile. The garment was almost completely destroyed in the fire, and there was not enough of the garment left to conduct tests in accordance with the Federal Flammable Fabrics Act.
Mrs. Donovan's children have brought this wrongful death claim against defendant alleging strict liability and negligence for defective design of the garment.

Discussion
To succeed on a strict liability or negligence claim for defective design of a product, plaintiff must show that the product was indeed defective. Defendant argues that plaintiffs cannot produce any evidence that supports the claim that the sweatsuit was defective. Plaintiffs claim that the following evidence supports their allegations that the garment was unreasonably dangerous: the burn patterns on Mrs. Donovan's body, Mrs. Donovan's statements and notes at the hospital, Ron Gronemeyer, plaintiffs source and origin expert, who will testify that the garment was the source of the fire and that it generated sufficient heat to damage other parts of the kitchen, Dr. Needles expert testimony, and the Fire Department's Civilian Casualty Report.
The Court will first address Dr. Needles testimony. Defendant filed a motion in limine to exclude Dr. Needles testimony under Daubert. Defendant does not challenge Dr. Needles qualifications to testify as an expert in garments, but rather it challenges Dr. Needles methods in this particular case. Dr. Needles concluded that the velour sweatsuit worn by Mrs. Donovan was highly flammable and unreasonably dangerous. Dr. Needles Report states that he bases his opinion on the physical evidence (the garment, shoes and rug), the incident reports, including photographs, and his own testing of the garment for flammability.
When considering an expert's methodology, the court should consider: 1) whether the underlying theory or technique can be or has been tested; 2) whether the theory or technique has been subjected to peer review and publication; 3) whether the technique has a known or knowable rate of error; 4) whether the theory or technique is generally accepted in the relevant community. Jaurequi v. Carter Mfrg. Co., Inc., 173 F.3d 1076, 1082 (8th Cir.1999) (citing Daubert v. Merrell Dow Pharm., Inc., 509 U.S. 579, 593-94, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993)). This list of factors is not exclusive, however, the focus of the inquiry should always be the scientific validity of the principles that underlie a proposed submission. Id. at 1082.
Dr. Needles, in his affidavit, stated that he would testify that there is too little of the garment remaining upon which to perform any reliable flammability testing. Therefore, by Dr. Needles own admission, he cannot base his conclusions on any actual testing of the garment.[2] In his report *1107 Dr. Needles states that his opinion is also based on his review of the garment, shoes, and rug, the incident reports, and the medical records. In addition, his affidavit says he relied on Mrs. Donovan's statements that it happened so fast, and the garment just melted.
After reviewing Dr. Needles report and affidavit, it is clear that he believes that the garment's burn rate must be unreasonably dangerous because if it had been slow, Mrs. Donovan would have removed the article of clothing. He also believes that the garment must have had a fast burn rate, because Mrs. Donovan said that everything happened so fast, and in the preprinted Civilian Casualty Report form, the box was marked indicating that the condition preventing escape was that there was no time to escape ... fire progressed too rapidly. This is simply an unscientific and speculative basis to conclude that the garment was defective and burned at a fast rate. There is nothing scientific about stating that the burn rate is unreasonably fast because the decedent and the fire department characterized the burning as fast and rapid. It is also mere speculation to assert that the burn rate must have been unreasonably fast because otherwise the decedent would have removed the garment. Therefore, the Court will not allow Dr. Needles to testify that the garment was defective or make any reference to the burn rate of the garment.
The existence of a defect may be inferred from circumstantial evidence with or without the aid of an expert witness. Klein v. General Elec. Co., 714 S.W.2d 896, 900 (Mo.Ct.App.1986). However, in determining whether a submissible case is made, the Court must examine the inferences to be drawn and determine whether those inferences are reasonably probable, without resorting to guesswork or speculation. Patterson v. Foster Forbes Glass Co., 674 S.W.2d 599, 603 (Mo.Ct.App.1984); see also, Franklin v. American Med. Sys., Inc., 12 F.3d 1102, 1993 WL 501814, at *2 (8th Cir.1993) (unpublished). The finding of a defect cannot rest on conjecture or speculation. Crump v. MacNaught P.T.Y. Ltd., 743 S.W.2d 532, 534 (Mo.Ct.App. 1987).
Plaintiffs argue that even without the testimony of an expert, there is still enough circumstantial evidence of a defect to present the question to a jury. Plaintiffs first piece of circumstantial evidence, are the statements made by the decedent. The Court finds, however, that this statement is inadmissible. First, the statement is hearsay, and the Court finds that none of the exceptions apply. Plaintiffs try to argue that it was an excited utterance under Federal Rule of Evidence 803(2), however, as plaintiffs admit, there is a contemporaneity requirement, and the statements were not made during or immediately following the fire, but rather within a few days of the fire. Plaintiffs also attempt to argue that it was a statement under belief of impending death, Federal Rule of Evidence 804(b)(2). This is a better argument, but it still fails. There is not enough evidence that when the decedent made these statements that she was under the belief she was dying. There was some mention of wanting to be buried in her blue dress, but she was also able to talk to her children on the phone the night of the accident, and she did not in fact die until two months later.
The Court also finds, that even if there is an applicable hearsay exception, the statement is still inadmissible as a lay witness's opinion under Rule 701. Mrs. Donovan's statement that it happened so fast, is merely an opinion. Under ordinary *1108 circumstances, that opinion might be admissible if Mrs. Donovan was able to give a foundation for that opinion. Unfortunately, she's not here to testify, and that statement alone, does not qualify under Rule 701.
Plaintiffs remaining circumstantial evidence is that the burn patterns on Mrs. Donovan's body show that the garment burned while she was still wearing it, that Ron Gronemeyer will present evidence that the garment was the source of the fire and generated sufficient heat to damage other parts of the kitchen and burn leather and wood, and the Fire Department's Civilian Casualty Report which shows that there was no time to escape. However, this circumstantial evidence does not show that it is reasonably probable that the garment was defective. This evidence would leave the jury merely speculating on why Mrs. Donovan did not remove her clothing promptly.
Plaintiffs primarily rely on two cases. In Klein v. General Elec. Co., the plaintiff had set a coffee maker to brew coffee at 7:15, and 35 minutes later the fire alarm rang. An expert testified that he conducted a burn experiment on this model of coffee maker, and found that it will ignite 25 minutes and 50 seconds after it is set to brew if the safety device fails. In addition, the fire chief testified that he believed that the coffee maker was the source of the fire. The court found that there was enough circumstantial evidence to submit to the jury. 714 S.W.2d 896, 901 (Mo.Ct. App.1986). In Patterson v. Foster Forbes Glass Co., the court held that an explosion of an empty baby bottle at room temperature after eleven months of careful use creates a reasonable inference that there was a defect in the physical composition of the bottle. 674 S.W.2d 599, 604 (Mo.App. 1984).
However, the facts in the present case are very distinguishable. A baby bottle is not meant to explode under the conditions in Patterson, and a coffee maker is not supposed to catch fire 35 minutes after it begins brewing. Therefore, this evidence alone indicates that it is reasonably probable that the items were defective. Clothing, however, does catch fire when it is exposed to an open flame. Ron Gronemeyer's testimony that the garment was the source of fire and that the fire damaged parts of the kitchen does not support the theory that the garment was defective. The garment was defective only if the burn rate was unreasonably dangerous. We have no idea why Mrs. Donovan did not remove her clothes quicker. We do not know if she had trouble getting the garment off, if she tried to throw water on it first, if she was simply in shock, if she moved her arm so as to catch the garment on fire in multiple places, or if the garment was in fact defective, and it burned so quickly that Mrs. Donovan was unable to remove it. To assume the latter, is simply speculative, and a defect cannot be found on more conjecture.
Plaintiffs also rely on the Fire Department's Civilian Casualty Report. The Court questions its admissibility because in the upper, right-hand corner of the document it states that the Entries contained in this report are intended for the sole use of the State Fire Marshal Estimations ... Any representation as to the validity or accuracy of reported conditions outside the State Fire Marshal's Office is neither intended nor implied. Nonetheless, the Court finds that a check by a box on a preprinted form indicating that there was no time for escape; explosion or fire progressed too rapidly is not enough circumstantial evidence to present to a jury.

Conclusion
Plaintiffs have no evidence that the garment was defective, an essential element in *1109 both their strict liability and negligence claims. Unfortunately, the obvious forms of evidence in a product liabilities case do not exist in the instant cause of action. The garment was destroyed and the only witness to the fire, Mrs. Donovan, has passed away. The inferences of a defect must be reasonably probable, and the accident, in and of itself, is not enough evidence that the garment was defective. Therefore, the Court must grant summary judgment.

ORDER
Pursuant to the memorandum opinion entered this day,
IT IS HEREBY ORDERED that defendant's motion in limine to prohibit plaintiffs expert witness from testifying at trial (# 29) is GRANTED.
IT IS FURTHER ORDERED that defendant's motion for summary judgment (# 28) is GRANTED.
IT IS FURTHER ORDERED that this cause of action is dismissed with prejudice.
NOTES
[1] The Court did review defendant's memorandum in support of summary judgment on Counts I and III, and found the arguments well-founded. Therefore, the Court feels it can dismiss these counts on the merits.
[2] Dr. Needles originally burned some strands of yarn from the garment, but he admitted that the test was not a recognized flammability test, and that strands generally burn faster than an actual swatch of the garment.