**SANDY FORD RANCH, INC., Appellant,**

v.

**Lester DILL and John Strothcamp, et al.,
Respondents.**

No. 53841.

Supreme Court of Missouri,
Division No. 1.

Jan. 12, 1970.

Leo A. Politte and Emil L. Poertner, Washington, for appellant.

Lawrence O. Davis, Union, G. C. Beckham, Steelville, for respondents.

SAMUEL E. SEMPLE, Special Judge.

This is an action to quiet title to a parcel of real estate based on adverse possession by plaintiff for over ten years before filing the action. Defendants deny adverse possession and claim any use of the property by plaintiff was permissive. A jury trial of the issues resulted in a verdict for defendants. Plaintiff appeals from the judgment rendered on the verdict.

Plaintiff, appellant herein, a closely held corporation owned by Francis H. Kennedy and his immediate family and managed by him, filed this action on September 3, 1966. The defendants, respondents herein, Lester Dill and John A. Strothcamp, after the

institution of this action purchased the tract of land in question from defendants Louise Hammann, Herbert Hammann and Ralph C. Hammann on August 5, 1967, and were duly made parties defendant in this action on October 6, 1967.

The tract of land in question is triangular shaped, being bounded on the west by the city limits of Stanton, Missouri, on the south by plaintiff Sandy Ford Ranch, on the north and east by Highway "W" and containing 12.02 acres. The Sandy Ford Ranch was purchased by Francis Kennedy in 1946. In July, 1947, the land just north of the Sandy Ford Ranch, which included the land here in question, was purchased by John C. and C. J. Hammann. In October, 1953, a strip of the Hammann land was conveyed by the Hammanns to the Missouri State Highway Commission for the right of way for Highway "W". This right of way divided the Hammann land and left a triangular shaped tract of 12.02 acres on the south side of Highway "W" which is the land in dispute here. In April, 1957, the tract was conveyed to C. J. Hammann, Fred Hammann and Louise Hammann, his wife, as joint tenants and record title continued in their names until August 29, 1966, when title was changed to Louise Hammann and her two sons, Herbert J. Hammann and Ralph C. Hammann.

A summary of the evidence presented at the trial reveals: Francis Kennedy as principal owner of Sandy Ford Ranch, Inc., maintained the fence along the south side of Highway "W" from 1954 or 1955 up to the time the suit was tried. The ranch pastured horses and cattle on the land in dispute and also erected no trespass signs on the property. The property was leased to other persons for grazing. No permission was ever given to Kennedy or the Sandy Ford Ranch, Inc., to use the property. Neither Kennedy nor Sandy Ford Ranch, Inc., had ever paid any taxes on this piece of land. There was evidence presented by plaintiff by persons who lived on the Sandy Ford Ranch that the fence along Highway "W" was maintained by Sandy Ford Ranch;

that cattle were grazed on the property up to the fence on Highway "W" from about 1955 and 1956 up to the time this lawsuit was filed in 1966. One of plaintiff's witnesses testified that he rented pasture from plaintiff from 1959 to 1960 and in 1959 there was a fence along the south side of the Hammann land of old wire that had gaps in it; that there were some signs on this old fence marked "Hammann." This witness also testified that he had a conversation with Francis Kennedy about building some subdivisions on the land and Kennedy said that he was buying the land to get an outlet to the road. The witness made a temporary survey of a street and drove some temporary stakes. However, at a later date, Kennedy told him he was dropping the project for the time being. This witness also testified that, on one occasion in 1959, Kennedy came out to the ranch and saw some cows on the Hammann tract and told witness he was permitting his cattle to run on someone else's property and told witness that if they did any damage that witness would be responsible.

There was evidence presented on behalf of defendants that the Hammann tract was completely enclosed by fences in 1948 and that there was a fence on the south side of the Hammann tract. There was testimony by defendant Strothcamp, who had lived in the neighborhood almost continuously since 1948, that there was a fence across the south side of the Hammann tract in 1948 and a big part of this fence was still there on the date of the trial; that around 1958 or 1959 there was a fire on the Hammann tract and Kennedy asked him to help fight the fire and he told Kennedy that he had been run off the land by Kennedy's man with a gun. Kennedy said that, if he would help fight the fire, he could hunt on Hammanns' ground and the Sandy Ford Ranch, that he had permission to use the Hammann land. Defendant Dill testified that he lived nearby to the land in dispute and that he drove past the land almost daily for the past thirty-five years; that, when Highway "W" was built in 1954 or 1955, he put in the fence along the road on the

Hammann tract and tied in this new fence to the old fence located on the south line of the Hammann tract. About this same time in 1954 or 1955 Kennedy told him that he had made arrangements to pasture the Hammann tract. Louise Hammann testified that she was the widow of Fred Hammann and the sister-in-law of John C. Hammann and C. J. Hammann. C. J. Hammann was a disabled veteran and made his home in the Wadsworth Hospital in Wadsworth, Kansas for a number of years prior to his death in 1966. She was acquainted with Francis Kennedy and around 1952 or 1953 he came to her home in St. Louis and inquired if this tract of land near Stanton was for sale. She told him that, at that time, the record title was in her brother-in-law, C. J. Hammann, and he would have to contact him. She gave Kennedy C. J. Hammann's address and said that Kennedy went to Wadsworth, Kansas and talked to C. J. Hammann. Mrs. Hammann further testified that she had paid the taxes on the land beginning in 1947 up to the time the land was sold to defendants Dill and Strothcamp in August, 1967.

Defendants presented a witness, Frank Blume, who testifed that he rented pasture from Kennedy and the Sandy Ford Ranch, Inc., in the spring and summer of 1958 and as part of the deal he was to maintain the fences. He stated that, in the spring of 1958, the Hammann tract was entirely enclosed by fences. Kennedy told him that he had permission to use the Hammann ground and also told him to cut some gaps in the fence along the south side of the Hammann tract. He did cut some gaps in the fence on the south side of the Hammann tract so that cattle could go back and forth from the Sandy Ford Ranch, Inc., into the Hammann tract.

Plaintiff assigns as error that the court erred in overruling plaintiff's motion for a directed verdict at the close of the evidence. Plaintiff argues that defendants admitted in their answer that, prior to April, 1957, plaintiff did in fact fence the land and grazed cattle on it, and that defendants

having admitted actual and open possession, the burden of proof then shifted to the defendants to prove that such possession was not hostile but was permissive and that defendants failed to carry the weight of the evidence as to permissive use.

■ It is well settled that a party claiming land by adverse possession has the burden of proof of establishing all of the essential elements of adverse possession, which requires a showing that the claimant held actual, notorious and continuous possession of the land under an unequivocal claim of ownership for the statutory period; however, once the claimant has made its prima facie case, the burden of going ahead on that issue shifts to the other party. City of Kirksville v. Young, Mo., 252 S.W. 2d 286, 289; Landers v. Thompson, 356 Mo. 1169, 205 S.W.2d 544, 546.

The law with respect to directing a verdict for the party having the burden of proof has been stated as follows: " 'It is a generally accepted rule in this state that a verdict may not be directed in favor of the proponent, that is the party upon whom the law casts the final burden of proof. * * * There is, however, a well-recognized exception to the rule. If the opponent, that is the party not having the burden of proof, admits either in his pleadings or by counsel in open court or in his individual testimony on the trial the truth of the basic facts upon which the claim of the proponent rests, a verdict may be directed against him, and if the proof is altogether of a documentary nature and the authenticity and correctness of the documents are unquestioned, and if such proof establishes beyond all doubt the truth of facts which as a matter of law entitled the proponent to the relief sought, and such proof is unimpeached and uncontradicted, the proponent will be entitled to a peremptory instruction. This is upon the theory that there is no question of fact left in the case and that upon the questions of law involved the jury has no right to pass.' " Charles F. Curry & Company v. Hedrick, Mo., 378 S.W.2d 522, 531.

■ Defendants' answer does not specifically admit that, prior to 1957, plaintiff fenced the land in dispute and grazed cattle on it as plaintiff contends. The answer merely states that Francis Kennedy acting for plaintiff attempted to purchase the land prior to April 19, 1957. C. J. Hammann (then owner of the land) refused to sell, but gave permission to gratuitously graze livestock thereon and erect a fence to contain the livestock. Plaintiff presented evidence showing that the land in dispute had been occupied and used by plaintiff for grazing purposes for over ten years and Francis Kennedy testified that such possession was open and hostile to all others for over the full ten-year period. There was evidence that plaintiff was not asserting possession, as hostile or under an unequivocal claim of ownership. On several occasions during the ten years prior to filing the suit, plaintiff's agent Francis Kennedy, indicated that plaintiff did not own the land in dispute and that said land was being occupied and used by plaintiff with permission. There was sufficient evidence to present an issue of fact as to whether the possession of plaintiff was open, hostile and under an unequivocal claim of ownership. The trial court did not err in refusing to direct a verdict for plaintiff at the close of all the evidence.

■■ Plaintiff complains that there was error in giving Instruction No. 6 on behalf of defendant which was a converse of plaintiff's verdict directing Instruction No. 3. Plaintiff argues that this instruction converses the element of possession of the land by plaintiff when this essential fact of possession was admitted by defendants in their answer. Plaintiff as previously mentioned misconstrues the effect of defendants' answer as the answer does not specifically admit actual possession by plaintiff, but merely states that defendants agreed to permit plaintiff to gratuitously graze livestock and to erect a fence to contain the livestock. Defendants' Instruction No. 6 is an exact converse of plaintiff's verdict directing Instruction No. 3. It has been held

that a defendant may submit an exact converse of plaintiff's submission. Dell'Aria v. Bonfa, Mo., 307 S.W.2d 479. A true converse instruction does not need testimony to support it because absent a judicial admission by the defendants, the credibility of the witnesses giving oral testimony establishing plaintiff's case remains for the jury. Kimbrough v. Chervitz, 353 Mo. 1154, 1159, 186 S.W.2d 461, 464. Defendants' answer is not a judicial admission that plaintiff actually possessed the land. The giving of Instruction No. 6 as an exact converse instruction was not erroneous.

■ Plaintiff next contends that the court erred in giving on behalf of defendants Instruction No. 7 because there was no evidence of permissive use. This Instruction No. 7 directed verdict for defendants on a finding that plaintiff's possession if any was with permission of defendants and their predecessors in title.

Plaintiff argues that there was no proof by defendants that defendants had given permission to plaintiff to use the land and no showing by defendants of any compensation being paid for use of the land or any explanation as to why they would be given free use of the land. This contention is without merit as there was evidence that Kennedy told both defendants that he had permission to use the land. Witness Blume also testified that Kennedy told him he had permission to use the property and plaintiff's own witness Hulsey stated that in 1959 Kennedy told him he was going to buy the land and on another occasion in 1959, Kennedy got after Hulsey for permitting cattle to get over on someone else's property (the Hammann tract) and told him if the cattle did any damage he (Hulsey) would be responsible. It is apparent that there was sufficient evidence to warrant the giving of Instruction No. 7 on use of the land with permission.

■ Plaintiff's next assignment is that of error in admitting immaterial and prejudicial evidence concerning the background of Francis Kennedy and the means by which

**6**

Kennedy acquired property not involved in this action. Plaintiff argues that it was error to allow defendants' counsel to inquire of plaintiff's president (Kennedy) about buying land not involved in this case while employed by the Alien Property Custodian. It was also contended that the court erred in permitting defendants' counsel to inquire as to the whereabouts of Kennedy on August 12, 1967, well knowing that on the very day of the trial of this action (January 12, 1968) there were articles in the metropolitan St. Louis papers concerning the presence of one Francis Kennedy in Florida for an attempted meeting with a now deceased labor counsel. Plaintiff argues that this question was irrelevant and was injected to alert the jury to the newspaper articles. Plaintiff apparently contends that both questions were irrelevant to any issue in the case and were interjected by defendants' counsel to create prejudice against plaintiff's president, Francis Kennedy. · These contentions are not well taken. It should be noted that the questions complained of here were directed to Kennedy on cross-examination. Defendants' counsel in cross-examining Kennedy brought out that he had bought Sandy Ford Ranch land from an individual who had purchased the land from the Alien Property Custodian and that Kennedy had worked as an appraiser for the Alien Property Custodian. Counsel than asked Kennedy, "And because you were an appraiser for the Alien Property Custodian you couldn't buy the land in your name, could you?" An objection was made and thereupon the question was withdrawn by defendants' counsel.

■ The other objectionable question referred to by plaintiff asked of Kennedy on cross-examination was "Do you remember where you were on August 12, 1967?" An objection was made to the question and sustained by the court. The subject of neither of these questions was again referred to by defendants' counsel. In one case the question was withdrawn and the other instance an objection to the question

was sustained. With respect to the question as to the whereabouts of Kennedy on August 12, 1967, there is nothing in the way of evidence in the record to substantiate plaintiff's contention that the question was intended to direct the jury's attention to some newspaper stories about a Francis Kennedy. The contention is made for the first time in argument in plaintiff's brief. It should be noted that the questions objected to here were not an attempt to discredit Kennedy by proving or showing matters or occurrences by independent witnesses as was the case in Switzer v. Switzer, Mo., 373 S.W.2d 930, 939, cited by plaintiff. A good deal of latitude is permitted in cross-examining witnesses. It has long been the rule in Missouri that on cross-examination a witness may be asked any questions which tend to test his accuracy, veracity or credibility or to shake his credit by injuring his character. He may be compelled to answer any such question, however irrelevant it may be to the facts in issue, and however disgraceful the answer may be to himself, except where the answer might expose him to a criminal charge. Chism v. Cowan, Mo., 425 S.W.2d 942, 948. The circumstances presented here in cross-examination do not present any patently prejudicial or erroneous matter to the jury.

■ Plaintiff next contends that the trial court erred in not granting plaintiff a new trial because the verdict was against the weight of the evidence. Plaintiff argues that plaintiff's evidence clearly established open, hostile possession of the land for over ten years, but that defendants' evidence as to permissive use is not substantiated by any believable evidence. Plaintiff argues that Francis Kennedy testified that his possession of the property was not by permission; that he had not told anyone that the use of the property was by permission; that his actions and the actions of the defendants' previous owners are inconsistent with permission and are wholly consistent with adverse possession and that the testimony of present defendants that Kennedy did state he was using the land with permission

is insufficient to establish permissive use. This contention apparently goes to the weight of the evidence which was for the jury to determine. It is true that the trial court in the exercise of its sound judicial discretion may set a verdict aside as against the weight of the evidence. However, in the exercise of that discretion, it may determine not to set the verdict aside. Here the trial court overruled plaintiff's motion for a new trial. J. D. Streett & Co. v. Bone, Mo., 334 S.W.2d 5, 9. " 'There is, perhaps, no more firmly established doctrine than that on appeal from a judgment on a verdict of a jury, an appellate court is not authorized to weigh the evidence. * * * Whether a jury's verdict is against the weight of the evidence is a question for the trial court alone.' " Parks v. Midland Ford Tractor Co., Mo. App., 416 S.W.2d 22, 26; Wilcox v. Coons, 362 Mo. 361, 241 S.W.2d 907, 916, 917.

Plaintiff's last assignment is that the trial court erred in allowing the attorney for defendants to malign the character of plaintiff's agent, Francis Kennedy, in remarks to the jury during the trial and in the closing argument. Plaintiff again argues that defendants' counsel by questions asked of Francis Kennedy intended to show that Kennedy as a public official improperly acquired land and this prejudiced the jury against him. This point has previously been raised and ruled on herein. Plaintiff also argues that, in defendants' closing argument, a statement was made by counsel that, because of certain testimony presented by defendants, Kennedy was lying when he testified to certain claims he made about the property and a reference by defendants' counsel that Kennedy's actions reminded him of a vulture watching for its prey and such comments and arguments taken as a whole resulted in a suc-

cessful attempt to prejudice the minds of the jury against Kennedy. It is not necessary to detail the arguments of which plaintiff complains for at the time plaintiff's counsel made no objection of any character. It is the general rule that when counsel do not object to allegedly improper argument at the time it is made they will not be heard to object on appeal and nothing pertaining to the argument in this case has been preserved and presented for appellate review. Stanziale v. Musick, Mo., 370 S.W.2d 261, 269; Davis v. Illinois Terminal R. Co., Mo., 326 S.W.2d 78, 86. Consideration of this assignment was not requested nor justified under Civil Rule 79.04, V.A.M.R.; however, reviewing the argument under that rule permitting reversal and remand for plain errors affecting substantial rights when the court deems that manifest injustice or miscarriage of justice has resulted therefrom, no reversible error is found. The subject matter and the language employed were not manifestly inflammatory, and it could not confidently be said that either of the remarks complained of as they appear in context, improperly influenced the jury to an unjust result or deprived the plaintiff of a fair trial in a simple case involving simple issues. Brown v. Boyd, Mo., 422 S.W.2d 639, 643, 644; Stanziale v. Musick, supra; Kelly v. Terminal R. Assn. of St. Louis, Mo., 315 S.W.2d 699, 704; Birmingham v. Coen, Mo., 320 S.W.2d 509, 510.

The judgment for defendants is affirmed.

HENLEY, Alternate Judge, concurs.

SEILER, P. J., not sitting.

STORCKMAN, J., absent.