Lindsey Nicole MILLER, a minor,
By her next friend, Sharon
Miller, Appellant,

v.

SSM HEALTH CARE CORPORATION, d/b/a St. Mary's Health Center, Jefferson City, Missouri; Jefferson City Medical Group, P.C., Women's Clinic of Jefferson City, P.C.; and Robert E. Ferris, M.D., Respondents.

No. ED 86975.

Missouri Court of Appeals,
Eastern District,
Division Four.

June 6, 2006.

---

1. All statutory references are to RSMo 2000, unless otherwise indicated.

418

John Wooddell, Robert S. Bruer, Springfield, MO, for appellant.

Timothy J. Gearin, David P. Ellington, Tyler S. McClay, St. Louis, MO, Charles H. Stitt, Kansas City, MO, for respondent.

ROBERT G. DOWD, JR., Judge.

Lindsey Nicole Miller ("Plaintiff") appeals from the judgment entered upon a jury verdict in favor of SSM Health Care Corporation ("SSM"), Women's Clinic of Jefferson City, P.C., and Robert E. Ferris, M.D. ("Dr.Ferris") (collectively referred to as "Defendants") following a jury trial on Plaintiff's medical negligence action. Plaintiff contends the trial court abused its discretion in allowing evidence of Plaintiff's expert's censure by a professional organization for making misrepresentations in a deposition involving another medical liability case. Plaintiff also appeals the trial court's grant of summary judgment in favor of Jefferson City Medical Group, P.C. ("JCMG"), a fourth defendant named in Plaintiff's petition. Plaintiff claims the trial court erred in granting summary judgment in favor of JCMG because JCMG was vicariously liable for the acts of Dr. Ferris. We affirm.

Plaintiff was born on January 31, 1990 at St. Mary's Health Center in Jefferson City, Missouri, which at the time was operated by SSM. Dr. Ferris was the obstetrician involved in Plaintiff's delivery. Viewed in the light most favorable to the verdict, the facts surrounding Plaintiff's birth are as follows. Plaintiff's mother went to the hospital on the morning of January 31, 1990 after her water broke. Dr. Ferris decided to administer the drug Pitocin to speed up the labor process. Dr. Ferris entered the order for the medication at about 5:00 p.m., and thereafter left the hospital to go to his home located 1.8 miles away from the hospital. It was not the custom and practice of obstetricians to remain at the patient's bedside during the drug's administration. The administration of the drug began a few minutes later.

Obstetrical nurse Virginia Pritzel ("Nurse Pritzel") began to administer Pitocin at the lowest dosage. Nurse Pritzel stayed in the room and monitored the patient's response to the drug. At 5:30 p.m., mild, variable decelerations of the fetal heart were noted on the fetal monitor.

Decelerations generally indicate an infant's cord is being pinched or compressed for short periods of time. The decelerations continued at varying degrees during the administration of the drug as noted by the fetal monitor. Just before 6:00 p.m., there was a prolonged deceleration in the fetal heart rate. Nurse Pritzel placed an internal scalp lead on Plaintiff so that she would be able to monitor the fetal heart rate more accurately. At 6:11 p.m., Nurse Pritzel turned her patient on her side to relieve any possible cord compression. After this intervention, Plaintiff's heart rate improved. At 6:26 p.m., Nurse Pritzel paged Dr. Ferris. Dr. Ferris returned her page at 6:26 p.m. Nurse Pritzel informed Dr. Ferris that Plaintiff had experienced decelerations in her fetal heart rate, that she had discontinued the administration of Pitocin, and that she had turned the patient on her side to relieve any cord compression. Dr. Ferris advised Nurse Pritzel to hydrate the patient and add oxygen if she thought appropriate, and to call him back to inform him of how things were going. Nurse Pritzel paged Dr. Ferris at 6:37 p.m. and again at 6:40 p.m., and informed Dr. Ferris that Plaintiff's heart rate decelerations were continuing. Dr. Ferris arrived back at the hospital at 6:50 p.m. He decided to do an emergency Cesarean section. At that time, the fetal monitor strips indicated good heart rate variability and accelerations, which indicated Plaintiff had sufficient oxygen through the point in time the fetal monitor was removed and the patient was taken to surgery. Plaintiff's fetal monitor strips showed that she had sustained no injury through the point in time when the monitor was removed for purposes of surgery. The surgery from preparation to delivery took twenty minutes to perform. When Plaintiff was delivered at 7:11 p.m., she was not breathing and had no heart beat. Plaintiff suffered a brain injury from a complete lack of oxygen due to her umbilical cord being compressed for a least a ten-minute period shortly before she was born.

Plaintiff filed her petition against SSM, JCMG, Women's Clinic of Jefferson City, P.C., and Dr. Ferris asserting negligence on the part of Nurse Pritzel and Dr. Ferris resulting in Plaintiff suffering a hypoxic brain injury. The trial court entered summary judgment in favor of JCMG as to Plaintiff's claim of vicarious liability. The case proceeded to trial against Defendants. After hearing all the evidence, the jury found in favor of Defendants. The trial court subsequently denied Plaintiff's claims in her motion for a new trial finding the jury's verdict was supported by substantial and competent evidence, and there was no error in allowing the evidence of a professional organization censure because it was relevant to the credibility of the expert witness. Plaintiff now appeals.

In her first point, Plaintiff argues the trial court erred in overruling Plaintiff's objection and permitting Defendants' cross-examination of Plaintiff's expert witness, Dr. Barry Schifrin, on the subject of a medical society's previous censure of Dr. Schifrin. Plaintiff asserts that the evidence of the censure was not legally relevant and it was inadmissible hearsay. We disagree.

Dr. Schifrin was Plaintiff's expert witness. During direct examination, Dr. Schifrin described his education and experience, his interest in electronic fetal monitoring, and his publications and presentations related to that subject. Dr. Schifrin's curriculum vitae, Exhibit 150, was identified by the witness and received by the trial court. The exhibit was used to reflect Dr. Schifrin's specific credentials in terms of education, professional activities, and writings. The exhibit noted Dr. Schifrin's membership in, and

subsequent resignation from, the American College of Obstetrics and Gynecology ("ACOG").[1]

During cross-examination by SSM's attorney, Dr. Schifrin testified that he had written for a peer review medical journal. He also explained his role as a reviewer for peer review journals. SSM then asked Dr. Schifrin, without objection, whether "ACOG is your peers." In response, Dr. Schifrin answered that he is "a reviewer for the ACOG journals." SSM's attorney then asked Dr. Schifrin whether ACOG had censured him. Plaintiff objected on relevancy and hearsay grounds. SSM's attorney responded that Plaintiff had placed Dr. Schifrin's curriculum vitae into evidence, which referenced his resignation from ACOG, and that Dr. Schifrin's peer reviews were in evidence. The attorney for Dr. Ferris added that the reasons for Dr. Schifrin's resignation from ACOG went to his credibility as a witness because he had ACOG on his vitae, he talked about being a member of ACOG, and his resignation from ACOG was noted on his vitae. The trial court overruled Plaintiff's relevancy objection, but sustained her hearsay objection. The trial court ruled that SSM's attorney could ask Dr. Schifrin whether he had been censured by ACOG, but would not admit a letter referring to the ACOG censure. In so ruling, the trial court observed that Dr. Schifrin had listed ACOG on his vitae, and that he gave peer reviews, or that he did some kind of review for ACOG.

When Dr. Schifrin's cross-examination resumed, the following exchange took place:

[SSM'S ATTORNEY]: Doctor, July 19, 2004, were you censured by ACOG for violation of Section 5.2, Societal Responsibilities of ACOG Code of Professional Ethics 2001, by making factual misrepresentations in an opinion letter and deposition testimony for a medical liability claim?

[DR. SCHIFRIN]: That's what it says, yes, I agree with that, that's what happened.

[SSM'S ATTORNEY]: And subsequent to this, in November of 2004, you resigned from ACOG?

[DR. SCHIFRIN]: Yes.

SSM's attorney did not ask Dr. Schifrin any further questions about the censure. Later, Dr. Ferris's attorney cross-examined Dr. Schifrin about the ACOG censure, without objection, and asked:

[DR. FERRIS'S ATTORNEY]: Okay. And, in fact, I think on your curriculum vitae, the very first organization you list was ACOG, right?

[DR. SCHIFRIN]: Surely, yes.

[DR. FERRIS'S ATTORNEY]: That— that situation where ACOG censured you, sir, for making factual misrepresentations in an opinion letter and deposition testimony for a medical liability claim, when did you give that testimony that resulted in that censure by ACOG; do you recall?

[DR. SCHIFRIN]: I think it was—I don't remember exactly. Probably 2003, early—late 2002, 2003.

1. Dr. Schifrin's curriculum vitae listed, as the first of fourteen organizational memberships, that he was a Fellow, American College of Obstetricians and Gynecologists, March 31, 1975—November 29, 2004 (Resigned). Dr. Schifrin also listed that he was an "Editorial Consultant, Journal of the American College of Obstetricians and Gynecologists." Dr.

Schifrin also indicated on his curriculum vitae that he had received two "Junior Fellow" awards, the Ephraim McDowell Award, and the Searle–Donald F. Richardson Award from ACOG. Dr. Schifrin also listed a number of publications and abstracts that he had completed for ACOG.

Dr. Ferris's attorney did not ask Dr. Schifrin any further questions regarding the censure. Plaintiff asked no further questions of Dr. Schifrin on redirect.

■ The admissibility of evidence lies within the sound discretion of the trial court and will not be disturbed absent an abuse of discretion. *Nelson v. Waxman*, 9 S.W.3d 601, 603 (Mo. banc 2000). The trial court abuses its discretion when its ruling is clearly against the logic of the circumstances then before the trial court and is so unreasonable and arbitrary that the ruling shocks the sense of justice and indicates a lack of careful deliberate consideration. *Id.* at 604. Furthermore, it is well established that the extent and scope of cross-examination in a civil action is within the sound discretion of the trial judge and will not be disturbed unless an abuse of discretion is clearly shown. *Id.* (*citing Callahan v. Cardinal Glennon Hosp.*, 863 S.W.2d 852, 868–69 (Mo. banc 1993)). This is especially true for cross-examinations of expert witnesses. There is wide latitude to test qualifications, credibility, skill or knowledge, and value and accuracy of opinion. *Callahan*, 863 S.W.2d at 869 (*citing Stafford v. Lyon*, 413 S.W.2d 495, 499 (Mo.1967)).

■ Plaintiff first argues that the evidence of Dr. Schifrin's ACOG censure, although logically relevant to Dr. Schifrin's credibility, was not legally relevant and inadmissible. Here, however, the jury was entitled to know about the censure because it might have affected Dr. Schifrin's credibility as an expert witness. The jury is entitled to know information that might affect the credibility of the witness, and the weight to be given his testimony. *Callahan*, 863 S.W.2d at 869. In fact, the Missouri Supreme Court has said:

[i]t has long been the rule in Missouri that on cross-examination a witness may be asked any questions which tend to test his accuracy, veracity or credibility or to shake his credit by injuring his character. He may be compelled to answer any such question, however irrelevant it may be to the facts in issue, and however disgraceful the answer may be to himself, except where the answer might expose him to a criminal charge.

*Sandy Ford Ranch, Inc. v. Dill*, 449 S.W.2d 1, 6 (Mo.1970). An accusation of misrepresentation by an expert made by an organization with which the expert was once affiliated is a subject-matter that goes to the credibility of that expert witness. Dr. Schifrin's censure by ACOG for making false representations as an expert went directly to his credibility as an expert witness. The trial court properly exercised its discretion in permitting the inquiry about Dr. Schifrin's ACOG censure.

■ Plaintiff's assertion that the trial court improperly allowed extrinsic evidence in a collateral matter of prior conduct must also fail. Initially, we note that Plaintiff did not object on this basis at trial, and therefore, this claim is not preserved for appellate review. *See Carter v. St. John's Regional Medical Center*, 88 S.W.3d 1, 18–19 (Mo.App. S.D.2002). Even under gratuitous plain error review, however, we cannot find that the trial court erred. Specific acts of prior conduct may be the subject of cross-examination if relevant to the truth and veracity of the testifying witness. *See* WILLIAM A. SCHROEDER, 22A MISSOURI PRACTICE, MISSOURI EVIDENCE Section 628.1 (2d ed. 2004 Pocket Part)("it has long been the rule in Missouri that on cross-examination a witness may, in the discretion of the court, be asked questions about any specific incidents of misconduct or immorality, whether or not the subject of a criminal conviction, which might tend to cast doubt on his credibility or veracity.") Plaintiff concedes that Dr. Schifrin

could have been asked whether he made the misrepresentations, but Plaintiff insists the form of the question regarding the censure was improper. We do not find Plaintiff's distinction to be persuasive. Dr. Schifrin admitted the fact of the censure and the basis for it. He did not deny the censure and made no attempt to explain away the censure as a mere accusation of misconduct.

Moreover, the trial court sustained Plaintiff's objection to the use of extrinsic evidence of Dr. Schifrin's censure and would not allow admission of the letter referring to the censure. Dr. Schifrin answered the questions truthfully alleviating the need for extrinsic evidence. In addition, Dr. Schifrin's in-court testimony could not be considered "extrinsic evidence." *See Litton v. Kornbrust*, 85 S.W.3d 110, 114 (Mo.App. W.D.2002). Furthermore, Plaintiff's characterization of the ACOG censure as a collateral matter does not change the outcome. The trial court has discretion to allow cross-examination on collateral matters affecting witness credibility. *See Sandy Ford Ranch, Inc.*, 449 S.W.2d at 6.

■■■ Plaintiff's assertion that Dr. Schifrin was improperly impeached with evidence of uncharged crimes is also without merit. We note that Plaintiff did not object on this basis at trial, and therefore, this claim is not preserved for appellate review. *See Carter*, 88 S.W.3d at 18–19. Even under gratuitous plain error review, we cannot find that the trial court erred. Plaintiff relies on *Holden v. Berberich*, 351 Mo. 995, 174 S.W.2d 791 (1943) to support its contention that a witness cannot be impeached by evidence of crimes that have not resulted in a conviction. We agree with the statement in *Holden* that the "well-settled general rule" is "that a witness cannot be discredited by interrogating him on cross-examination concerning a

mere accusation or indictment for crime." *Id.* at 792. However, this rule is not applicable to this case. Unlike the witness in *Holden*, Dr. Schifrin was not asked if he had been charged with a crime. Dr. Schifrin was asked if he had been censured by ACOG after he introduced his curriculum vitae containing numerous references to ACOG and accolades from ACOG. Furthermore, Plaintiff's contention that the question about ACOG's censure "amounts to an accusation or conclusion of perjury" is not supported by the record. Perjury was not mentioned or implicated in the trial.

The Missouri cases cited by Plaintiff do not advance her position. In *Klein v. General Elec. Co.*, 714 S.W.2d 896 (Mo.App. E.D.1986), the court held that the trial court did not abuse its discretion in rejecting evidence that the plaintiff's expert had previously been named as a co-conspirator in a federal criminal action. *Id.* at 905. The court noted that witness credibility may not generally be discredited through the showing of a mere accusation, arrest, or criminal charge that does not result in a conviction. *Id.* The court, however, held that this prohibition has no application when the accusation reveals the expert witness's bias. *Id.* The court stated that the "scope and extent of questioning permitted during cross-examination on collateral matters concerning misconduct of a witness for purposes of impeachment is left to the trial court's discretion." *Id.* Thus, in *Klein*, the trial court did not abuse its discretion in barring cross-examination because the federal conspiracy charge did not reveal a bias. Here, however, the censure for making misrepresentations as an expert witness goes directly to Dr. Schifrin's credibility and bias as a witness.

Plaintiff's reliance on *Noble v. Lansche*, 735 S.W.2d 63 (Mo.App. E.D.1987) is also

misplaced. In *Noble,* the court held the trial court committed reversible error in permitting a defendant in a medical malpractice case to impeach the plaintiff's expert witness during cross-examination with the fact that the expert had voluntarily surrendered his license to dispense narcotics because he had a substance abuse problem. *Id.* at 64–65. The court stated that the cross-examination was improper because the expert's former substance abuse problem was unrelated to his skill, knowledge, and qualifications to express expert opinions on the propriety of the defendant's surgery performed on the plaintiff. *Id.* Here, the censure by ACOG does go directly to Dr. Schifrin's credibility as an expert witness. Dr. Schifrin acknowledged without qualification or explanation that he had been censured by ACOG for making misrepresentations in the course of rendering his expert opinion in a medical liability case.

Plaintiff also cites to numerous other cases from other jurisdictions,[2] including a number of unpublished trial court decisions addressing Dr. Schifrin's censure by ACOG.[3] These cases are not controlling in this case and we find them unpersuasive. Here, Dr. Schifrin's ACOG censure goes directly to his credibility as an expert and it is an appropriate question on cross-examination.

In addition, Plaintiff sets forth a public policy argument that the public's interest would be served in adopting a rule barring cross-examination of expert witness on the subject of professional censures.[4] We are not persuaded by Plaintiff's argument. This State provides for cross-examination of witnesses on matters that relate to the credibility of the witness and Plaintiff's public policy argument does not undermine that long standing practice.

■ Finally, Plaintiff argues the evidence of Dr. Schifrin's censure was inadmissible hearsay because it consisted of an out-of-court statement made by ACOG declaring that Dr. Schifrin acted inappropriately on a specific prior occasion, and it was offered for the truth of the matter asserted. However, the sources of information used to cross-examine a witness to test qualifications, credibility, skill, or knowledge, and the value and accuracy of the expert's opinion can include hearsay and do not need to be admissible as evidence. *State v. Brooks,* 960 S.W.2d 479, 493 (Mo. banc 1997); *State v. Dewey,* 86 S.W.3d 434, 439 (Mo.App. W.D.2002).

■ Plaintiff ultimately maintains that she was prejudiced by repeated references to Dr. Schifrin's censure by ACOG during examination of witnesses and in closing arguments. Plaintiff, however, has failed to show how she was prejudiced. While

---

2. The cases from other jurisdictions cited by Plaintiff include *Shirley v. Smith,* 261 Kan. 685, 933 P.2d 651 (1997); *Selby v. Baker,* 2002 WL 31264745 (Mich.App. Oct.4, 2002); *McIlhenny v. Crown Park Investors,* 1994 WL 1251146, 27 Phila. Co. Rptr. 568 (Pa.Com.Pl. 1994); and *Wagner v. Georgetown Univ. Med. Ctr.,* 768 A.2d 546 (D.C.App.2001).

3. Plaintiff provided copies of these decisions in her appendix. These cases were not presented to the trial court and are not part of the record below. Plaintiff filed a motion for this court to permit the filing of her appendix including these cases. Because these cases

are irrelevant to our determination on appeal, we deny Plaintiff's motion with regard to these cases.

4. In her appendix, Plaintiff provided materials, including an American College of Emergency Physicians Professional Liability Task Force Report and American Society of Anesthesiologists Letters to the Editor, to support her public policy argument. Because these materials are irrelevant to our determination on appeal, we deny Plaintiff's motion to permit the filing of such materials.

the record shows repeated references to Dr. Schifrin's ACOG censure, we find no prejudice, especially considering the overwhelming weight of the evidence that supports the judgment.

In conclusion, we find the evidence was properly admitted by the trial court because the evidence of the censure related to Dr. Schifrin's credibility as an expert witness. The trial court did not abuse its discretion in allowing cross-examination of Dr. Schifrin about his censure from ACOG. Point denied.

 In her second point, Plaintiff contends the trial court erred in entering summary judgment in favor of JCMG and in denying Plaintiff's motion for partial summary judgment on the issue of JCMG's vicarious liability. Plaintiff asserts JCMG is vicariously liable for any negligence of Dr. Ferris because JCMG acquired the liability for the acts of Dr. Ferris by merging with his employer, and once such liability has been acquired, it cannot be terminated by a unilateral attempt to transfer the liability to another, namely the Women's Clinic of Jefferson City, P.C. In light of our holding in Plaintiff's first point, we need not address this issue. The judgment in favor of Women's Clinic of Jefferson City, P.C. and Dr. Ferris is affirmed because there was no trial court error. Thus, where there is no liability found on the part of Women's Clinic of Jefferson City, P.C. and Dr. Ferris, there can be no vicarious liability to JCMG. Plaintiff's second point is denied.

The judgment is affirmed.

NANNETTE A. BAKER, P.J. and SHERRI B. SULLIVAN, J., concur.