

# In the Missouri Court of Appeals
# Eastern District

## DIVISION FIVE

| | | |
|---|---|---|
| JIMMIE SUE MARCHBANK AND JOHN MARCHBANK, | ) ) ) | No. ED111426 |
| Appellants, | ) ) | Appeal from the Circuit Court of Cape Girardeau County |
| v. | ) ) | Cause No. 20CG-CC00120 |
| AMIT CHAKRABARTY, M.D., AND UROLOGY CLINICS OF NORTH ALABAMA, P.C., D/B/A POPLAR BLUFF UROLOGY, | ) ) ) ) ) | Honorable Scott A. Lipke |
| Respondents. | ) | Filed: April 30, 2024 |

Jimmie Sue and John Marchbank (collectively, "Marchbank") filed suit against Amit Chakrabarty and Urologic Clinics of North Alabama, P.C., d/b/a Poplar Bluff Urology for injuries Jimmie Sue Marchbank suffered following a vaginal prolapse repair surgery. Marchbank claims Chakrabarty's negligence resulted in the creation of a permanent colostomy. Following a trial, the jury returned a verdict in Chakrabarty's favor. Marchbank appeals.

In addition to offering testimony as a fact witness, Chakrabarty also testified as a non-retained witness. Because the circuit court excluded impeachment evidence of Chakrabarty's prior disciplinary record, the circuit court deprived the jury of information it could use to evaluate Chakrabarty's qualifications as a non-retained expert witness and erred. The circuit court's judgment is reversed, and the case is remanded.

**Background**[1]

After being referred to a urologist by her primary care physician, Marchbank had an initial appointment with Chakrabarty in December 2016. Chakrabarty diagnosed Marchbank with incontinence, urinary tract infections, vaginal prolapse, and fecal leakage. Chakrabarty discussed treatment options with Marchbank and prescribed her medication for her overactive bladder.

Marchbank returned to Chakrabarty's office in January 2017, for a follow up visit. Marchbank reported that the prescribed medication did not alleviate her symptoms. Marchbank and Chakrabarty discussed further treatment options, including surgery to insert a urethral sling and repair the vaginal prolapse. Marchbank elected to proceed with surgery.

On January 25, 2017, Chakrabarty performed two distinct surgical procedures on Marchbank. First, Chakrabarty inserted a urethral sling. Then, Chakrabarty conducted a vaginal prolapse repair.

Chakrabarty examined Marchbank the following day. During his examination, Chakrabarty noted Marchbank did not have any point tenderness after palpitation, there was no fecal leakage and no evidence of any active vaginal bleeding. Marchbank reported she had a normal bowel movement earlier that morning.

On the evening of January 28, 2017, Marchbank stated she had a large bowel movement that came through her vagina. Marchbank went to the emergency room in Poplar Bluff and was discharged with instructions to follow up at a Saint Louis hospital. In Saint Louis, Marchbank

---

[1] This Court reviews the evidence and reasonable inferences therefrom in the light most favorable to the jury's verdict. *Tharp v. St. Luke's Surgicenter-Lee's Summit, LLC*, 587 S.W.3d 647, 652 (Mo. banc 2019).

was diagnosed with a three-centimeter defect in her rectovaginal septum. The treating doctor indicated a fistula matured between her rectum and vagina due to ischema, an inadequate blood supply to an organ. The treating doctor noted there was a suture at the fistula site. The treating doctor attempted to close the fistula, but ultimately, was unsuccessful. The inability to close this fistula resulted in Marchbank receiving a permanent colostomy.

Marchbank filed suit against Chakrabarty, claiming he negligently performed the vaginal prolapse repair by creating a three-centimeter incision in her vaginal wall resulting in a fistula forming between her rectum and colon. Marchbank and Chakrabarty both filed motions in limine to exclude evidence. Chakrabarty sought to exclude evidence of a prior disciplinary action taken against him by the Alabama Medical Licensure Commission and the Alabama Board of Medical Examiners in 2003. Marchbank sought to exclude evidence she signed an informed consent document acknowledging the surgical procedure risks. The circuit court sustained both motions. At the conclusion of the trial, the jury returned a verdict in Chakrabarty's favor, and the circuit court entered judgment accordingly. Marchbank appeals.

**Analysis**

Marchbank raises two points on appeal[2] claiming the circuit court abused its discretion by preventing her from presenting evidence regarding Chakrabarty's prior disciplinary history. Marchbank argues this impacted her ability to impeach Chakrabarty's credibility, qualifications, training, and experience when he testified to the issues of the standard of care, causation, and

---

[2] Marchbank also raises points on appeal challenging the circuit court's admission of her signed informed consent documents and a surgical video purportedly showing Chakrabarty performing a urethral sling procedure. Because Marchbank's points on appeal regarding Chakrabarty's prior disciplinary history are dispositive, these other arguments need not be addressed as they may not reoccur on retrial.

damages. Further, she argues that Chakrabarty's testimony opened the door to this evidence being admitted because he testified as an expert.

"The admission or exclusion of evidence lies within the sound discretion of the [circuit] court and will not be disturbed absent clear abuse of discretion." *Sherrer v. Bos. Sci. Corp.*, 609 S.W.3d 697, 705 (Mo. banc 2020) (quoting *Cox v. Kan. City Chiefs Football Club, Inc.*, 473 S.W.3d 107, 114 (Mo. banc 2015)). The circuit court abuses its discretion when its ruling "is clearly against the logic of the circumstances then before the court and is so unreasonable and arbitrary that it shocks the sense of justice and indicates a lack of careful, deliberate consideration." *Id*. When a circuit court excludes evidence, appellate review is focused "not on whether the evidence was admissible but on whether the [circuit] court abused its discretion in excluding the evidence." *Rhoden v. Mo. Delta Med. Ctr.*, 621 S.W.3d 469, 484 (Mo. banc 2021) (quoting *Coyle v. City of St. Louis*, 408 S.W.3d 281, 289 (Mo. App. 2013)). An erroneous evidentiary ruling warrants reversal when prejudice is demonstrated. *Mitchell v. Kardesch*, 313 S.W.3d 667, 675 (Mo. banc 2010).

Prior to trial, Chakrabarty was identified in interrogatories as a non-retained expert who may testify regarding the standard of care, liability, damages, and causation. Rule 56.01(b)(7). In addition to his own medical records, Chakrabarty was provided the witnesses' depositions and Marchbank's other medical records. Chakrabarty used these records, along with his more than forty years of experience, training, and urological education, to formulate his expert opinion.

The circuit court sustained Chakrabarty's motion in limine to exclude his 2003 Alabama disciplinary action due to the remoteness in time and the lack of specific allegations in the order. Immediately before and during the trial, Marchbank presented offers of proof, seeking to overturn the circuit court's initial determination to exclude Chakrabarty's prior disciplinary

4

history. Marchbank argued the prior disciplinary history was admissible because Chakrabarty was testifying as an expert witness and, therefore, she should be allowed to impeach his knowledge, skill, and experience. After the offers of proof, the circuit court's decision remained unchanged, and Chakrabarty's prior disciplinary history was excluded from trial.

Section 490.065.2(1), RSMo Supp. 2017, allows a witness "who is qualified as an expert by knowledge, skill, experience, training, or education" to testify as an expert to assist the jury in understanding the evidence. *Portis v. Greenhaw*, 38 S.W.3d 436, 446 (Mo. App. 2001). "Attorneys are given wide latitude to test the qualifications, credibility, skill or knowledge, and value and accuracy of opinions given by an expert witness." *Dodson v. Ferrara*, 491 S.W.3d 542, 565 (Mo. banc 2016). "Impeachment provides a tool to test a witness's perception, credibility, and truthfulness, which is essential because a jury is free to believe any, all, or none of a witness's testimony." *Mitchell*, 313 S.W.3d at 675. As long as the witness is qualified as an expert, "any weakness in the expert's knowledge is for the jury to consider in determining what weight to give the expert." *Kivland v. Columbia Orthopaedic Grp., LLP*, 331 S.W.3d 299, 311 (Mo. banc 2011).

Because Marchbank sought to question Chakrabarty regarding his qualifications and skill as an expert witness, the circuit court abused its discretion in excluding this impeachment evidence. *See Miller v. SSM Health Care Corp.*, 193 S.W.3d 416, 421 (Mo. App. 2006) (finding jury entitled to know about expert witness's professional organization censure because it could affect credibility); *Kinser v. Elkadi*, 674 S.W.2d 226, 236 (Mo. App. 1984) (finding a doctor's hospital privileges "are legitimate subjects of inquiry when the physician testifies as an expert witness"). Marchbank should have been allowed to cross-examine Chakrabarty regarding his qualifications and skill as an expert witness.

The exclusion of this evidence was prejudicial to Marchbank's case. As in most medical malpractice cases, the credibility of the witnesses is of the utmost importance. Chakrabaty testified at trial that he was relying on his many years of experience as a urologist in forming or developing his expert conclusions. Those years included time when Chakrabaty's medical license was on probation in Alabama. This was an important fact for the jury to be able to consider in assessing Chakrabaty's qualifications, credibility, skill and knowledge in his field. By withholding this information from the jury, the circuit court effectively determined that it was not an important consideration. "Factual determinations of matters in dispute, including the weighing of medical opinions, rest solely within the province of the jury. It is error for the court to declare as a matter of law a result or legal effect which is within the exclusive province of the jury to determine." *Kivland*, 331 S.W.3d at 311 (quoting *Mitchell*, 313 S.W.3d at 683). The circuit court's error in refusing admission of this testimony was prejudicial error warranting reversal for a new trial.

This Court notes, however, the difficulty presented to the circuit court in this case. Had Chakrabarty testified solely as a fact witness, then the evidence of his probation would be evaluated under a different standard. When Chakrabarty provided an expert opinion, however, additional evidence became relevant and admissible.

## Conclusion

The circuit court's judgment is reversed, and the case is remanded.

_____
John P. Torbitzky, P.J.

Thomas C. Clark II, C.J., and
James M. Dowd, J., concur.

6